I think we're about to have a repeat player. Is this right? Okay. Let us set up and then we'll be ready to go. When you're ready, Counsel. Okay. Good morning, Your Honor. My name is James Macy. I'm here on behalf of the petitioner Chen Jialin. This, again, is an application for asylum based on China's coercive population control. It was denied on the basis of an adverse credibility finding by the immigration judge. It's appealed and the VIA issued an affirmation without opinion. Our argument has been that the immigration judge lacked any substantive evidence on which to base the credibility finding, the incredibility finding, and that the petitioner's testimony was and her documentation was consistent, plausible, rational, and without an internally consistent. When I received the acknowledgment of hearing notice, I took to heart the suggestion that we not re-argue stuff that was adequately covered in the briefs. And I haven't prepared to argue point by point those things. The only thing I thought was new and ought to be discussed was that the government offered the court a subsequent case also concerning population control in China. This was Jiamu Wang, the Jiamu Wang case. And in response to that submission, I would only say that that case fully supports our arguments in this case. The adverse credibility finding was upheld in that case, but for far different reasons than appear in this case. In that case, it also stated that when there is no substantial evidence on which to support a rejection of the petitioner's documents, they cannot be rejected. They have to be accepted or at least submitted. And in this case, there was no objection by the government to the admission of the documents or their authenticity. And the immigration judge based his rejection of the documents on a government report that was not admitted to the record, something called a country profile, and it was not in the record. My reading of the transcript, it appears to me that it was the intention of the immigration judge to admit that. And at that time, there was no objection to the admission. Is that what the record shows? Are we talking about the country profile? Yes. There were two documents discussed. One's called a country report. Yes. And one called a country profile. Those are separate documents to my understanding. And also my understanding, there was never any mention at the time of the hearing concerning the country profile, which is the document that apparently contains some language concerning the prevalence of fraudulent documents being produced in China. Well, I want to direct you to the country report. Do you agree that that was properly before us? Yes, I do, Your Honor. All right. Yes. And as I said in my briefs, I searched that for any comments concerning documentation or fraudulent documentation creation in China. I didn't see it. It's a lengthy, small print report, and there may be something in there. But the immigration judge definitely referred to the country profile, which doesn't appear in the record as far as Petitioner can determine. But beyond that, even if it was in the record, I think that the briefs make clear that there, and the evidence in this case, there's nothing here to say that the Petitioner's documents, the documents submitted by the Petitioner, were in any way questionable. Neither the government nor the immigration judge ever questioned those documents when the Petitioner was directly testifying. So, again, the briefs make clear that the Petitioner ought to be given an opportunity to respond if the immigration judge is of the opinion that there's something on the face of it that indicates these documents are not valid. The third point made by the case submitted by the government was that it also made the point that the judge isn't the immigration judge cannot use his own speculation and his own personal beliefs about a particular topic in order to, as substantive evidence, to reject otherwise credible testimony or documentation by the Petitioner. In our case, the immigration judge did so. The immigration judge had his own personal opinions both concerning population control policies of China as well as a kind of a parallel subject that came up in the hearing concerning the Petitioner's husband's Fulong Gong activities. There was nothing in the record to support the judge's conclusions, either that the Petitioner should have done things differently when she found out she was first pregnant with her first child, differently than she did do them, or that the Petitioner should have had far more knowledge, information, and insight into her husband's Fulong Gong activities, both of those conclusions by the judge, which he found to be substantive evidence on the adverse credibility finding. You know, I should know the answer to this, but I do not. At the time of her hearing, where was her husband? He was in Canada, Your Honor. In any case, I think I pretty much finished my comment concerning those two issues. Okay. And, in fact, as I said, we have a number of issues in the briefs that the judge used to make his findings, including arguments about the birth certificate for the first child, arguments concerning the receipt for the fine that the family paid for the birth certificate. Could you address that? I gather that the fine was assessed and then not paid for another three years, and the I.J. says that's a reason why the I.J. was skeptical that the child even existed. Could you respond to that? Yes, Your Honor. I think what his point was, was that the receipt was incredible in and of itself because it wasn't dated until three years after the birth of the child. The testimony of the Petitioner was that it took the family that long to gather the money to pay the fine, and the country report specifically says that many times these can take several years, including I think one example was 10 to 12 years for a fine to be finally paid. Now, she testifies that she has fear of persecution upon return because the population policies are enforced more strictly in the cities. What evidence do we have that if she goes back to China she'll end up in a city? Well, I know the answer, but I'm not sure what's in the evidence concerning that kind of a question. Okay. Let's hear your answer, and then we'll figure out if there's something in the record to support your answer. Yeah. If she were to return to China, the only thing in the record that would suggest that is that her family has she testified her family lives in this city, that she owns a home in that city, that her child and her mother, someone's caring for her child in that city. Well, that's fair enough. Okay. Counsel, turning to your reply brief, and specifically page 9, there's a citation to Wang v. Ashcroft. Let me ask you several questions. When were you first admitted to the Ninth Circuit? 1991, I think, Your Honor. Have you stayed current with the rules of the circuit? The local rules? No, Your Honor. I only looked at them again when I started preparing for this brief. When you pulled, what is it, 69 Federal Appendix, was there an admonition printed by West Publishing Company with respect to the citation of the case you've cited? Your Honor, there may well have been, but I may have to apologize. It was so interesting to me, I may have missed the admonition. Well, there's a lot of people who feel the same way, and there's a national argument going on about citation of unpublished works. This work of the Ninth Circuit is not for publication. The rule, local rule, prohibits your use of that citation to any court in the Ninth Circuit of which this is one. And you have done so in your brief, and it's in violation of the rule. I hope it doesn't happen again. I don't like sanctions, but I'd like to make it clear that if you're going to practice here, please abide by our rules. Yes, Your Honor. I guess I'm finished for now. Thank you. Okay. Thank you very much. Your timing is perfect. We'll hear from the government. I'm Marguerite Taylor, representing the government in this matter. Welcome back. I say welcome back to San Francisco. We've seen you not just this week, but we've seen you before. We're happy to have you back. Thank you. As we've just discussed, in order to be deemed eligible for the relief of asylum, an applicant must convince the fact finder that she's credible. And in this case, Ms. Chan just did not do that. Well, isn't the rule really that the fact finder must have substantial evidence to determine that the petitioner is not credible? That's right. And, indeed, the immigration judge's adverse credibility finding is supported by substantial evidence. For example, critical to Ms. Chan's claim is that she had a first baby in China and now fears returning because she's carrying a second or was carrying a second during the hearing. So critical to the claim is whether, indeed, there is a first child. Her testimony about that is inconsistent. For example, in China it is necessary to register a first pregnancy. She both testified that she did not know of that requirement and that she knew of the requirement, but was too preoccupied with her mother's health to take care of the requirement. In any event, this first pregnancy was not registered, and she gave inconsistent testimony about her knowledge of the obligation to register. And what was the fine for? The fine was for the birth of the first child, the alleged fine for the alleged birth. And assuming the fine took place and assuming the birth took place, the fine was for not having registered? Assuming all those things, the fine was for the birth of the first child, but not for the registration of the pregnancy. But you don't get fined for having a first child. You do not get fined for having a first child in China? Correct. That is to say, you can have a child in China. You can't have two. So the fine has to come from something other than simply having had the first child. Oh, well, yes, you're right. I assume that the fine was for having had the first child without having registered. I think that's a fair assumption, Your Honor. So the question then is, okay, not whether you didn't register, that's where the fine's from. The question is, why didn't you register? And to that point, you're saying she's giving us varied and inconsistent answers as to why she didn't register. And register in a timely way. That's right. That's a more refined analysis. She sounds like she's a lawyer. She says, well, I didn't do it, and if I do do it, it's because I didn't know. And, you know, she's giving various answers. And there's a little fudge in them. Okay, I get it. Well, you know, fudge is in the eye of the beholder. Yeah, yeah, yeah. There's also inconsistent – there's also another major problem in her evidence, and that is her failure to produce the brother at the immigration judge hearing. Now, Ms. Chen had testified that when she became aware of her second pregnancy while she was still in China, she phoned her husband, who had already left for – who was in Canada. He had left for the U.S., but ended up in Canada, and said, oh, gee, what do I do now? And he said, well, don't come to Canada, because I want you to be close to family. So please go to the U.S. instead. And the only relative that she had in the U.S. was her younger brother. So she came to the U.S. She testified with the sole purpose of being with her brother so he could shepherd her through this pregnancy. And when she was asked where her brother was, she said she didn't know. When she was asked why he didn't come to the hearing, because he could corroborate all this claim of hers about having a first child, about the mother being ill, she said she had talked to him, but he was too busy. No, he was far away, and he was busy at the store. Now, in Chichoub, this court has held that an immigration judge may rely on the failure to produce an easily available witness, and in Chichoub, the witness was in Western Europe, I think in France. In this case, the brother whom she had come to join was in the same country, and my recollection is in the same state. Now, she was represented. Now, help me out. What evidence do we have that tells us affirmatively how close he was to her? Because, of course, she later testifies he's not here because he's, quote, far away, and he's, quote, busy at the store. We actually have a phone number for him. And so if I can figure out the area code, I can tell you where he was. Do we have testimony from her where she says, for example, I came to be with my brother during the pregnancy? Yes. Where is that? Let me see if I noted that. It's at 148, and the phone number is at 61. One thing at a time. Let me do the 148 first. Yes. Okay. Okay. So what testimony are you going to point me to that says I came to be with him? My husband told me over the phone that you go to the U.S. because there are more relatives. They can take care of you. And then she's asked what relatives she has, and she says my younger brother. Yeah. And then where is your younger brother? And she answers. She doesn't know. No. She says I only know he's quite far away from here. Whatever that means. But I don't understand English, so I don't even know where the location is. But she had a phone number for him when she arrived. So tell me where it says that she has the phone number, and then let's look at the phone number. Okay. The phone number is actually this way just to only have tabs. I had it a minute ago. Here we go. It's on 61. Okay. Good. I compliment you on your familiarity with the record here. Good job. Thank you. It's a credible fear worksheet, and she was asked if she could provide information on a relative or sponsor, and she gave her brother's name and a phone number. I'm having trouble reading with the handwriting here. Okay. If yes, provide information, a relative or sponsor, name, I guess that's the brother's name. And then it says brother, younger. Brother, younger, relationship, and then there's a phone number, 229. I don't know where 229 is. I'm sorry, Your Honor. I could certainly supplement. I don't know where 229 is either. I doubt that a person from China might know either. Well, Your Honor, she came to be close to her brother. She came instead of to be close to her husband with a pregnancy. We know what she terms the second pregnancy existed, and she was represented at the time. Now, if her brother was too busy at the store where he was working, he could have, maybe her lawyer could have gotten an affidavit from the brother. Some kind of evidence to corroborate. Under Chachoub, this court has not. Is corroboration necessary in this kind of proceeding? I think it's certainly justified. The lack of it in this case is a justifiable reason for the immigration judge to find adverse credibility because. If we disagree with the immigration judge's concerns about her testimony, then it would be unnecessary to have corroboration. Isn't that true? If you decide that Ms. Chen was credible, then of course. For example, we might decide that based on her statement she had a child and based on her statement that she had to pay a fine because she didn't register the child, that that's evidence that she had a child and paid a fine for not doing so. But, Your Honor, it seems to me the court's role is to see if the immigration judge was justified, if there was anything in the record to justify the immigration judge's conclusion, not to put yourself in the position of the immigration judge. Well, Counsel, this brings me to a question I have about your briefing at page 22. You cite Melkonen v. Ashcroft and you cite He v. Ashcroft, and in one case it goes back to the IGA for the fact finding, and in the other case it doesn't. Are these cases irreconcilably in conflict? I'm sorry, Your Honor. Does the Ninth Circuit have to go and bank to resolve the question of whether you return it or whether we have the authority to make the factual decision? Actually, Your Honor, in this case you don't have to reach that question, and this is why. There is an issue which Judge Fletcher has raised about internal relocation, and it's raised in Ms. Chen's briefs. She has claimed that the family planning is more strictly enforced in the cities rather than in the countryside. And so there is a question of whether she could escape harm altogether by moving within her country. Was that issue presented to the immigration judge? Did they ever reach that? The immigration judge, it has not yet been presented to the immigration judge, and that's precisely why it should be reached. It's really not raised by Petitioner. Excuse me? It's not really raised by Petitioner as a grounds for our reversal, is it? But the fact that it is raised at all is a problem. I'm not sure that I'm going to hold any of the parties responsible for a question that I asked. It's in the briefs also, Your Honor. It's in Petitioner's brief on page 21, and it is also in the slide list, which I can't put my hands on at the moment. But I would be happy to tell the Court a record cite in a letter or in a motion. Let me go back and rephrase my question. Without regard to the facts in this case, are Milt Conan and he in conflict? Well, I think they're certainly distinguishable. Again, he is distinguishable from this case. No, I don't want to talk about the facts of this case. On the face of these two opinions, are they irreconcilable? Is this the Ninth Circuit gone amuck, in other words? I think they are irreconcilable, but, of course, he is tied to the PRC, whereas Milt Conan is not. And so that's a primary difference between these two cases. But in the government's view, of course, he might be wrongly decided. And the ---- You don't know who wrote he, by the way. I do, Judge Fletcher, with all due respect. That's okay. You can suggest that it's wrongly decided. That's fair. That's okay. Because under Ventura, the Supreme Court decision, when something has been decided on adverse credibility and the court overturns the credibility findings, then as to merits, the whole thing should go back to the board. Well, actually, Ventura is a hard case. And we're off this case for just a minute. But it's worth discussing because even if he is right, there are a lot of remaining questions to what do we do once we have an adverse credibility finding reversed by us. In he, what happened was that we reversed the adverse credibility finding. And because the issue, once that was decided, was so clear, it wasn't as though there was a succeeding issue that hadn't yet been reached, which was the case in Ventura where the panel in Ventura said, well, okay, we can reach that one. It wasn't reached. And the Supreme Court says, uh-uh, you don't get to reach it if they haven't reached it. In he, there were no further issues. In other words, he's believable or not believable. And he's believable. He's entitled to relief. The harder question, I think it remains unresolved in our cases, is what if we find that the adverse credibility finding is not adequately supported? Do we send it back to the I.J. to allow the I.J. another shot at adequately supporting the adverse credibility finding? And I think our cases on that waffle a little bit. He's not in that group, but there are – but we have some ambiguity in our case law on that point. Well, certainly, if your Honors decide that this adverse credibility finding is insufficient, the government would urge remand either for another look at the credibility finding, as Judge Fletcher has just suggested, or for a decision on the internal relocation question, which has not yet been addressed. Sorry. We're over five minutes now. Oh, yeah. Well, sometimes this happens. Okay. Now, in fact, we've been distracting you by Mr. He and various other people. Is there any last thing you want to say before – we're also going to give you some time for rebuttal. We're just running over in this case. Actually, I would like to conclude, Your Honors, and refer to the Wang case, which I 28J'd, because in that case, one of the holdings was that the court should uphold the immigration judge decision either in the aggregate or if even one prong of that decision was supported by substantial evidence, then that adverse credibility finding should be upheld. So in this case, even if there are pieces of the adverse credibility finding with which you disagree, if there's even one prong of it with which you agree, the government urges you to affirm that adverse credibility finding. Thank you very much. Thank you for your argument. Would you like a minute for rebuttal? One, I'm able to represent to the panel where Area Code 229 is, if anybody would like to ask me that. Right. We can take that as a promising subject for inquiry, where 229 is. Where do you think it is? It includes a city called Tipton, Georgia. Oh, okay. That may or may not be true, but that's a nice place to start. Thank you. I don't take that as a record representation, but thank you. Of course. There was argument and discussion, I believe it may be better characterized, concerning the first child and what China's population control policies are concerning first children and married couples. I think the country report is quite clear about this and has quite a bit of information that's in the record. And I'll paraphrase it by saying that even first children have to, the parents have to obtain a family planning certificate from the government, the local government, in order to have that first child, in order to get pregnant. You don't go after you're pregnant because, as the country report states, the adverse consequences of reporting an unplanned pregnancy can include an order to abort. And, again, I think that's all supported in the record. I'm tempted to go beyond the record, and I'm not going to. The non-appearance by the brother, the record is ambiguous about what, for what purpose, Ms. Chin's husband referred her to her family here in the United States, saying it would be better for you to go there than to join me in Canada. They're to take care of her. She is pregnant, and I wouldn't argue that a lot of that is probably because of the pregnancy, but it's also financial and economic. I think that's fair to include that. If we're going to include in the phrase take care of you, we can include the pregnancy, but we also should include financial caring as well, providing a place to stay, providing food and clothing and so forth. I think that's the two comments I wanted to make. Okay. Thank you very much. The case of Chin v. Ashcroft, 0273673 is now submitted for decision. The next case on the argument calendar is Virpal Tower v. Ashcroft.
judges: Alarcon, Beezer, W. Fletcher